UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF RIHN, Individually and on Behalf of all Others Similarly Situated,<br><br>                     Plaintiff,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., ULI HACKSELL and STEPHEN R. DAVIS,<br><br>                     Defendants. | Case No: 15cv575 BTM(DHB)<br><br>**ORDER GRANTING MOTIONS TO CONSOLIDATE CASES; GRANTING MOTION OF PAUL AND SHARYN LEVINE FOR APPOINTMENT AS LEAD PLAINTIFF; GRANTING LEVINES' MOTION FOR APPROVAL OF CLASS COUNSEL** |
| STEVE A. WRIGHT and VICKI G. WRIGHT, Individually and on Behalf of all Others Similarly Situated,<br><br>                     Plaintiff,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., ULI HACKSELL and STEPHEN R. DAVIS,<br><br>                     Defendants. | Case No: 15cv593 BTM(DHB) |

      The following parties have filed motions to consolidate these actions, to be appointed lead plaintiff, and for approval or lead counsel:  (1) Daniel P. Fay and Teresa L. Fay ("Fays"); (2) Paul and Sharyn Levine ("Levines"); (3) Russ and

1

Johnathan Belden ("Beldens") (4) Ahmad Ahmad; (5) the Pries, Hancock, Monderer Group ("PHMG"); and (6) Warren Regent.[1] For the reasons discussed below, the Court **GRANTS** the motions to consolidate the actions, **GRANTS** the Levines' motion to be appointed Lead Plaintiffs, **GRANTS** the Levines' motion for approval of their selection of Lead Counsel, and **DENIES** the competing motions to be appointed lead plaintiff and for approval of lead counsel.

## I. BACKGROUND

Both of these actions are brought by a putative class of investors who purchased the publicly traded securities of Acadia Pharmaceuticals Inc. ("Acadia") between February 26, 2015 and March 11, 2015 (the "Class Period"). Plaintiffs allege that they were damaged because Defendants artificially inflated the price of Acadia securities by the dissemination of false and/or misleading information and the failure to disclose material facts regarding its New Drug Application for NUPLAZID and its business operations.

Acadia is a biopharmaceutical company focused on the development and commercialization of medicines to address unmet medical needs in neurological and related central nervous system disorders. One of Acadia's most prominent

---

[1] Oklahoma Firefighters Pension & Retirement System also filed a motion but subsequently withdrew it.

product candidates is NUPLAZID, a drug that is in Phase III development as a treatment for Parkinson's disease psychosis.

On February 26, 2015, Acadia announced in a press release that it anticipated submitting its New Drug Application ("NDA") in the First Quarter of 2015 and that it was "on track" to meet this timetable. However, on March 11, 2015, Acadia announced that it would not meet its timetable to submit the NDA in the First Quarter of 2015 and was delaying submission of the NDA to sometime in the second half of the year. That same day, Acadia announced the retirement of Acadia's CEO and director, Uli Hacksell. After these announcements, Acadia's common stock dropped $9.94 per share to close at $34.82 per share on March 12, 2015, a one-day decline of 22%.

The complaints filed in these actions name as defendants Acadia, Hacksell, and Chief Financial Officer, Executive Vice President, and Chief Business Officer Stephen R. Davis. Both complaints allege violations of §§ 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.

## II. DISCUSSION

A. Consolidation

Consolidation is appropriate when there is a "common question of law or fact . . . pending before the Court." Fed. R. Civ. P. 42(a). Class action shareholder

suits in particular are "ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned." Mohanty v. BigBand Networks, Inc., 2008 WL 426250, at *3 (N.D. Cal. Feb. 14, 2008).

Consolidation of these actions is appropriate. These actions present the same factual and legal issues. Each action alleges violations of federal securities laws, including §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5. Each action also names the same defendants and alleges substantially the same wrongdoing (materially false and misleading statements that artificially inflated the price of Acadia's securities). Therefore, the Court grants the motions to consolidate the actions.

B. Lead Plaintiff

    1. Governing Law

Under the Private Securities Litigation Reform Act ("PSLRA"), no later than 20 days after filing a class action securities complaint, a private plaintiff or plaintiffs must publish a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted, and that any member of the purported class may move the court to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Not later than 60 days after the date on which the notice is published, any member

of the purported class may move the court to serve as lead plaintiff of the purported class.  Id.

Within 90 days after publication of the notice, the Court shall consider any motion made by a class member to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  If more than one action on behalf of a class asserting substantially the same claims has been filed and any party has sought to consolidate those actions, the court shall not make the lead plaintiff determination until after the decision on the motion to consolidate has been rendered.  15 U.S.C. § 78u-4(a)(3)(B)(ii).

The Court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The presumptively most adequate plaintiff is the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he

satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002).

The presumption that a plaintiff is the most adequate lead plaintiff may be rebutted only upon proof by a member of the purported plaintiff class that the plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, the court must then proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy. Cavanaugh, 306 F.3d at 731. If so, that plaintiff becomes the presumptive lead plaintiff and other plaintiffs must be given the opportunity to rebut that showing. Id.

A straightforward application of the statutory scheme "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." Cavanaugh, 306 F.3d at 732. Once the Court identifies the plaintiff with the largest stake in the litigation, "further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." Id.

## 2. Lead Plaintiff Analysis

Motions to be appointed lead plaintiff were filed by the Fays, Levines, Beldens, Ahmad Ahmad, Warren Regent, and PHMG. After all of the motions were filed, Ahmad Ahmad, the Beldens, and PHMG filed papers conceding that they were not the movant with the largest financial interest. As discussed below, among the remaining movants, the Court finds that the Levines have the largest financial interest. The Court also finds that the Levines satisfy the requirements of Rule 23(a) and therefore grants their motion to be appointed Lead Plaintiffs.

### a. Financial Interest

There is no prescribed method for determining which movant has the largest "financial interest." The Ninth Circuit notes that "the court may select accounting methods that are both rational and consistently applied." Cavanaugh, 306 F.3d at 730 n. 4.

Previously, this Court sided with the courts that equate financial interest with potential recovery, as opposed to actual economic losses suffered, using either the "retained share" or "net shares purchased" methodology. See Schueneman v. Arena Pharm., Inc., 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011); Ruland v. Infosonics Corp., 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006). The "retained share" methodology looks to the number of shares purchased during the class

period that were retained as of the last day of the class period.  See Eichenholtz v. Verifone Holdings, Inc., 2008 WL 3925289, at * 2 (N.D. Cal. Aug. 22, 2008). Under the "net shares purchased" analysis, courts subtract the number of shares sold by a movant from those purchased during the class period.  In re Network Assoc. Inc., Sec. Lit., 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).

The difference between net shares and retained shares can be significant where a movant held a large number of shares before the class period, sold them all during the class period, then purchased a large number of shares during the class period and retained them until the end of the class period.  See Mulligan v. Impax Lab., Inc., 2013 WL 3354420, at * 7 (N.D. Cal. July 2, 2013).  The retained share methodology would not take into account gains from the sale of these shares at an inflated price.  In contrast, the "net shares purchased" methodology, which is premised on a uniform "fraud premium" throughout the class period, focuses on the net number of shares bought and sold during the class period.  In re Network Assoc., Inc., 76 F. Supp. 2d at 1027.

Here, the Fays allege losses of $314,050[2] based on 32,499 retained shares. However, on March 10, 2015, the Fays sold 30,732 shares that were purchased

---

[2] The Fays revised their loss calculation in their Omnibus Opposition [Doc. 21 at 4.]

before the Class Period. (Ex. B to Abadou Decl.) The Fays do not account for the gains from the sale of these shares, which certainly would have been significant.

The Levines claim losses of $143,595 based on 15,000 net shares purchased and retained.

Warren Regent claims a loss of $1,546 based on the purchase of 400 shares.

Here, there are no allegations of partial disclosures throughout the Class Period. Therefore, it appears that the "fraud premium" was constant throughout the Class Period. Given the uniform fraud premium and the large number of shares purchased by the Fays before the Class Period but sold during the Class Period, the Court finds that the net shares approach more accurately reflects the movants' potential damage recovery.

The net shares purchased by the Fays totals 1,767. In contrast, the Levines purchased 15,000 net shares. Thus, under the net shares calculation, the Levines have the largest financial stake in the litigation.[3]

b. <u>Typicality and Adequacy</u>

Claims are "typical" under Rule 23 if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon

---

[3] The Court does not reach the issue of whether the Fays properly calculated their losses under the PSLRA's 90-day bounce back rule, 15 U.S.C. § 78u-4(e)(2).

v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  The Levines' claims arise out of the same events and are based on the same legal theories as the claims of the other class members – i.e., the Levines claim that they purchased Acadia common stock during the Class Period and suffered damages as a result of Defendants' false and misleading statements.  Accordingly, the Levines satisfy the "typicality" requirement.

Representation is "adequate" when the interests of the plaintiffs and their counsel do not conflict with the interests of other class members, and the plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  Hanlon, 150 F.3d at 1020.  It appears that the Levines' interests are aligned with those of the other class members, and that the Levines are willing and able to serve as Lead Plaintiffs.  (Ex. B to Bower Decl.)  As discussed in greater detail below, the Levines' retained counsel, the Faruqi firm, is experienced in the area of complex securities class litigation and is clearly capable of representing the interests of the Class.  Therefore, the Levines are the presumptive Lead Plaintiffs under the PSLRA.

The presumption that the Levines are the most adequate Lead Plaintiffs may be rebutted only upon proof by a member of the purported plaintiff class that the Levines will not fairly and adequately protect the interests of the class or are subject to unique defenses that render them incapable of adequately representing

the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No movant has come forward with such proof. Accordingly, the Court appoints the Levines as Lead Plaintiffs.[4]

### c. Lead Counsel Analysis

Under the PSLRA, once the court has designated a lead plaintiff, that plaintiff "shall subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). If the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice. Cohen v. U.S. Dist. Court, 586 F.3d 703, 712 (9th Cir. 2009).

The Levines ask the Court to approve their selection of Faruqi & Faruqi, LLP as lead counsel. It appears that the Faruqi firm has devoted a substantial portion of its practice to class action securities fraud litigation and has obtained significant recoveries for injured investors in many cases. (Ex. D to Bower Decl.) In light of the firm's extensive experience in securities class action litigation, the Court approves the Levines' choice of counsel and appoints Faruqi & Faruqi, LLP as Lead Counsel.

---

[4] Although the Beldens concede that they do not have the largest financial interest, they ask that if a sub-class for Acadia options becomes warranted, the Court appoint them as lead plaintiffs for the sub-class. The Beldens' request is premature. The Beldens may seek appointment as lead plaintiffs if and when such a sub-class is created.

11

## III. CONCLUSION

For the reasons discussed above, the motions to consolidate these actions are **GRANTED**. The Court **CONSOLIDATES** Case Nos. 15cv575 BTM(DHB) and 15cv593 BTM(DHB). The caption page on all future filings should contain all of the captions, and all future docketing will be done in Case No. 15cv575, which shall be the main file.

The Court **GRANTS** the Levines' motion to be appointed Lead Plaintiffs. The Court appoints Paul and Sharyn Levine as Lead Plaintiffs in the consolidated Class Actions. The Court also **GRANTS** the Levines' motion for approval of lead counsel. The Court appoints Faruqi & Faruqi, LLP as Lead Counsel in the consolidated Class Actions.

The Court **DENIES** the competing motions for appointment as lead plaintiff and for approval of lead counsel.

**IT IS SO ORDERED.**

Dated: September 8, 2015

_____
Barry Ted Moskowitz, Chief Judge
United States District Court